1
2
3
4
5
6
7
8                    **UNITED STATES DISTRICT COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10

11   ILENE A. ZAUSS,                    Case No. CV 15-8788 SS

12              Plaintiff,

13        v.

14   CAROLYN W. COLVIN, Acting
     Commissioner of the Social        **MEMORANDUM DECISION AND ORDER**
15   Security Administration,

16              Defendant.

17

18

19                         **I.**

20                    **INTRODUCTION**

21

22        Ilene A. Zauss ("Plaintiff") seeks review of the decision of

23   the  Commissioner  of  the  Social  Security  Administration

24   ("Commissioner"  or  "Agency")  denying  her  application  for

25   Supplemental Security Income benefits.  The parties consented,

26   pursuant  to  28  U.S.C.  §  636(c),  to  the  jurisdiction  of  the

27   undersigned United States Magistrate Judge.  For the reasons stated

28

below, the Commissioner's decision is REVERSED and REMANDED for further administrative proceedings consistent with this decision.

## II.

### PROCEDURAL HISTORY

On June 25, 2012, Plaintiff filed an application for Supplemental Security Income ("SSI"). (Administrative Record ("AR") 53). Plaintiff alleged that she became unable to work as of September 14, 2008, (AR 55, 40), due to various conditions including bi-polar disorder, cervical cancer, fatty liver, high blood pressure, high cholesterol, chronic sphenoid sinusitis, acid reflux, asthma, and migraine headaches, (AR 136). The Agency denied the application on January 25, 2013. (AR 71-72).

On March 18, 2013, Plaintiff requested a hearing, (AR 89), which administrative law judge ("ALJ") Dean Yanohira held on March 14, 2014. (AR 22). At the close of the hearing, the ALJ noted that Plaintiff's treating psychiatrist Dr. Fazal Mirza, M.D., at Rio Hondo Mental Health Center, had not provided a medical source statement or updated treatment records. (AR 51). The ALJ indicated that he would keep the record open until April 14, 2014, to allow Plaintiff's counsel to submit the statement and records. (AR 51). Plaintiff submitted updated treatment records from Dr. Mirza as well as other records from Rio Hondo Medical Center but no medical source statement. (AR 14). On May 8, 2014, the ALJ issued a decision denying benefits. (AR 9-21). Plaintiff sought review of the ALJ's decision before the Appeals Council, which the Council

1  denied on October 2, 2015.  (AR 1-4).  The ALJ's determination then

2  became the final decision of the Commissioner.  (AR 1).  Plaintiff

3  filed the instant action on November 11, 2015.  (Dkt. No. 1).

4

5                                **III.**

6                         **FACTUAL BACKGROUND**

7

8      Plaintiff was born on September 1, 1964.  (AR 25, 54).  On

9  September 14, 2008, the alleged date of disability onset, she was

10 forty-four years old.  (AR 40, 55).  Plaintiff completed the

11 eleventh grade, but did not graduate from high school.  (AR 25,

12 137).  At the time of the hearing, Plaintiff lived in a house with

13 her mother and brother.  (AR 37).  In the sixteen years prior to

14 the alleged onset of her disability, Plaintiff worked as an

15 appointment setter, clerical employee, office manager, union

16 payroll clerk, and telephonic surveyor.  (AR 137, 146, 158).

17

18 **A.    Mental Health History**[1]

19

20     Plaintiff received mental health treatment in the early 1980s,

21 in 1992, in mid-2005, and from August 2011 through the date of the

22 hearing on March 14, 2014.  (AR 28-29, 62).

23

24     On August 25, 2011, Plaintiff was seen at Telecare Corporation

25 Mental Health Urgent Care at Long Beach.  (AR 198-213).  Plaintiff

26 reported    symptoms    of    depression,    anxiety,    helplessness,

27

28 [1] The Court does not describe Plaintiff's medical history, because
   it is not relevant to the claims at issue.

                                3

1  hopelessness, lack of self-worth, confusion, lack of focus,
2  paranoia, and being overwhelmed. (AR 205-06).  Staff referred
3  Plaintiff to Rio Hondo Mental Health Center for a psychiatric
4  evaluation.  (AR 209).

5

6      From October 2011 to January 2013, Plaintiff received
7  treatment from Dr. Mirza.  (AR 228-29, 352-66).  On October 19,
8  2011, Dr. Mirza diagnosed Plaintiff with bipolar disorder (most
9  recent episode mixed without psychotic features) and polysubstance
10 abuse (the latter in remission) and assigned Plaintiff a global
11 assessment of functioning ("GAF") score of 48.[2]  (AR 258, 228).
12 Dr. Mirza prescribed Plaintiff Geodon and Benadryl.  (AR 230-38,
13 353).  On September 19, 2012, Dr. Mirza noted that Plaintiff's
14 concentration was impaired, her motor activity was restless, her
15 speech was pressured, loud, and excessive, her affect was labile,
16 and her judgment and insight were "minimum." (AR 229).  Dr. Mirza,
17 however, also noted that Plaintiff's memory, cooperation, fund of
18 knowledge, and thought associations were average or unimpaired,
19 and that Plaintiff appeared to be capable of managing her own
20 funds.  (AR 229).  Dr. Mirza's treatment notes from October 2011
21 through December 2013 consistently indicate that Plaintiff
22 complained of mood swings, anxiety, depression, pressured speech,
23 insomnia, and easy irritability/frustration.  (AR 230-38, 258, 314-
24 16, 353-55, 449-57).  Treatment records from 2013 assess

25 _____

26 [2] A GAF score of 41-50 indicates "serious symptoms (e.g., suicidal
   ideation, severe obsessional rituals, frequent shoplifting) OR any
27 serious impairment in social, occupational, or school functioning
   (e.g., no friends, unable to keep a job)."
28 American Psychiatric Association, Diagnostic and Statistical
   Manual of Mental Disorders, 32 (4th ed.).

1    Plaintiff's attention, concentration, memory, insight, and
2    judgment as "marginal." (AR 449-57 (records from January 3, April
3    29, June 24, September 3, October 28, and December 17, 2013)).

5        In January 2014, Plaintiff began receiving psychiatric
6    treatment from Dr. Jun Yang, M.D., at Rio Hondo Mental Health
7    Center. (AR 411). Dr. Yang's treatment records from January and
8    February 2014 indicate a change in Plaintiff's medications to
9    Wellbutrin XL, Abilify, Topamax, and Restoril. (AR 447-48).
10   Records also identify Plaintiff's target symptoms as mood swings
11   and irritability. (AR 445). Dr. Yang assigned Plaintiff a global
12   assessment of functioning score of 50. (AR 444).

14   **B.   State Agency Consultative Opinion**

16       On January 22, 2013, the state agency medical consultant
17   Howard S. Leizer, Ph.D., reviewed, inter alia, Plaintiff's mental
18   health records from Dr. Mirza and assessed Plaintiff's mental
19   residual functional capacity. (AR 67-69). The consultant assessed
20   Plaintiff's ability to remember locations and work-like procedures
21   and her ability to understand and remember short and simple
22   instructions as "not significantly limited" and her ability to
23   understand and remember detailed instructions as "moderately
24   limited." (AR 67). Regarding her ability to sustain concentration
25   and persist in activities, the consultant assessed Plaintiff's
26   ability to carry out short and simple instructions, perform
27   activities within a schedule, maintain regular attendance and be
28   punctual within customary tolerances, sustain an ordinary routine

1    without special supervision, work in coordination with or in
2    proximity to others without being distracted, and make simple work-
3    related decisions as "not significantly limited." (AR 68). He
4    further assessed her ability to carry out detailed instructions
5    and complete a normal workday/workweek without interruptions from
6    psychologically-based symptoms and perform at a consistent pace
7    without an unreasonable number and length of rest periods as
8    "moderately limited." (AR 68). The consultant assessed
9    Plaintiff's ability to interact appropriately with the general
10   public as "moderately limited" and her ability to ask simple
11   questions or request assistance, accept instructions and respond
12   appropriately to criticism from supervisors, get along with
13   coworkers without distracting them or exhibiting behavioral
14   extremes, and maintain socially appropriate behavior and adhere to
15   basic standards of neatness and cleanliness as "not significantly
16   limited." (AR 68). The consultant assessed Plaintiff's ability
17   to respond appropriately to changes in the work setting as
18   "moderately limited" and her ability to be aware of normal hazards
19   and take appropriate precautions, travel in unfamiliar places or
20   use public transportation, and set realistic goals or make plans
21   independently of others as "not significantly limited." (AR 69).
22
23       The consultant relied upon the following to support these
24   conclusions: Plaintiff "plays with her dog," "[s]he has no
25   problems with personal care besides dressing, shaving and other,"
26   "[s]he is able to fix meals, complete household duties, talk to
27   her mom, ride in a car, use public transportation, go out alone,
28   drive (but doesn't have a car), shop in stores, and count change."

(AR 65-66; accord AR 66-69).  The consultant acknowledged that Plaintiff's treating psychiatrists' assessments of her mental limitations were more restrictive than his findings.  (AR 69).  The consultant opined, however, that the global assessment of functioning scores assigned by her treating psychiatrists "lack[ed] specificity and may not be reflective of functioning over time." (AR 70).  The consultant concluded that "the evidence suggests [Plaintiff] is capable of simple, unskilled, nonstressful tasks that do[] not require frequent interaction with others."  (AR 69).

C.   **Plaintiff's Relevant Testimony**

At the hearing on March 14, 2014, Plaintiff testified that she is unable to work due to anxiety, depression, bipolar disease, chronic dry eyes, and heel spurs.  (AR 27-28, 32-33).  Plaintiff testified that she "can't sit still for a minute without these anxiety attacks coming on.  I get depressed and then the bipolar, you know, it kicks in."  (AR 27).  Plaintiff testified that she has been receiving mental health treatment at Rio Hondo Mental Health Center, including counseling and psychiatric medication to treat her anxiety and depression, once a month for a little over two years.  (AR 28-29).  Plaintiff was treated by Dr. Mirza until approximately two months prior to the March 14, 2014 hearing, at which time she began seeing Dr. Yang.  (AR 29-30).  Plaintiff also had been involuntarily hospitalized in a psychiatric ward in the early 1980s.  (AR 28).  Plaintiff testified that the medication Geodon, which she was taking prior to switching medications at the beginning of 2014, "was working."  (AR 31).

1

2   Plaintiff further testified that she lives in a house with

3   her mother and brother and is able physically and independently to

4   care for herself when she wants to do so.  (AR 37-38).  Plaintiff

5   stated that she is not able to stand for long and that she cannot

6   walk far because of pain caused by her heel spurs.  (AR 38).

7   Plaintiff sometimes has to crawl to the bathroom.  (AR 39).

8   Plaintiff testified that she does not do household chores because

9   she keeps to herself in her room, but admitted that she cleans her

10   own room as best as she can and that her room is "not really dirty."

11   (AR 38).  Plaintiff does not very often leave the house unless she

12   has to do so.  (AR 38).  Plaintiff does not socialize and does not

13   have friends. (AR 39).  In addition, she does not often deal with

14   people, only close family at home, and she testified that she would

15   not be able to work with or around people because she does not

16   "even get along with the people [she lives] with."  (AR 39-40).

17

18   **IV.**

19   **THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS**

20

21   To qualify for disability benefits, a claimant must

22   demonstrate a medically determinable physical or mental impairment

23   that prevents her from engaging in substantial gainful activity

24   and that is expected to result in death or to last for a continuous

25   period of at least twelve months.  Reddick v. Chater, 157 F.3d 715,

26   721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)).  The

27   impairment must render the claimant incapable of performing the

28   work she previously performed and incapable of performing any other

8

substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920. The steps are as follows:

    (1)  Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

    (2)  Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three.

    (3)  Does the claimant's impairment meet or equal one of the specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is found disabled. If not, proceed to step four.

    (4)  Is the claimant capable of performing his past work? If so, the claimant is found not disabled. If not, proceed to step five.

    (5)  Is the claimant able to do any other work? If not, the claimant is found disabled. If so, the claimant is found not disabled.

1   Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari,

2   262 F.3d 949, 953-54 (9th Cir. 2001) (citations omitted); 20 C.F.R.

3   §§ 404.1520(b)-(g)(1) & 416.920(b)-(g)(1).

4

5       In between steps three and four, the ALJ must determine the

6   claimant's residual functional capacity ("RFC").   20 CFR

7   416.920(e).  To determine the claimant's RFC, the ALJ must consider

8   all of the claimant's impairments, including impairments that are

9   not severe.  20 CFR § 416.1545(a)(2).

10

11      The claimant has the burden of proof at steps one through

12  four, and the Commissioner has the burden of proof at step five.

13  Bustamante, 262 F.3d at 953-54.  "Additionally, the ALJ has an

14  affirmative duty to assist the claimant in developing the record

15  at every step of the inquiry."  Id. at 954.  If, at step four, the

16  claimant meets her burden of establishing an inability to perform

17  past work, the Commissioner must show that the claimant can perform

18  some other work that exists in "significant numbers" in the

19  national economy, taking into account the claimant's RFC, age,

20  education, and work experience.  Tackett, 180 F.3d at 1098, 1100;

21  Reddick, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(g)(1),

22  416.920(g)(1).  The Commissioner may do so by the testimony of a

23  vocational expert or by reference to the Medical-Vocational

24  Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2

25  (commonly known as "the Grids").  Osenbrock v. Apfel, 240 F.3d

26  1157, 1162 (9th Cir. 2001).  When a claimant has both exertional

27  (strength-related) and non-exertional limitations, the Grids are

28  inapplicable and the ALJ must take the testimony of a vocational

1  expert.  <u>Moore v. Apfel</u>, 216 F.3d 864, 869 (9th Cir. 2000) (citing
2  <u>Burkhart v. Bowen</u>, 856 F.2d 1335, 1340 (9th Cir. 1988)).

3
4  **V.**
5  **THE ALJ'S DECISION**
6
7  The ALJ employed the five-step sequential evaluation process
8  and concluded that Plaintiff was not disabled within the meaning
9  of the Social Security Act.  (AR 16).  At step one, the ALJ found
10  that Plaintiff had not engaged in substantial gainful employment
11  since her application for benefits date of June 25, 2012.  (AR 11).
12  At step two, the ALJ found that Plaintiff had the severe impairments
13  of bipolar disorder, right plantar fasciitis fibromatosis,
14  recurrent corneal filaments in both eyes, right heel spur, and
15  obesity.  (AR 11).  At step three, the ALJ found that Plaintiff
16  did not have an impairment or combination of impairments that met
17  or medically equaled one of the listed impairments in 20 C.F.R.
18  Part 404, Subpart Part P, Appendix 1 (20 C.F.R. §§ 416.920(d),
19  416.925-26).  (AR 11).  The ALJ found that Plaintiff had not alleged
20  that any of her impairments met or medically equaled the severity
21  of one of the listed impairments and that there was not any
22  objective medical evidence in the record indicating that any of
23  her severe impairments met or medically equaled any of the listed
24  impairments.  (AR 11).

25
26  The ALJ then found that Plaintiff had the RFC to perform
27  sedentary work as defined in 20 C.F.R. § 416.967(a) with the
28  following non-exertional limitations:  "Occasional climbing (but

no climbing ladders, ropes or scaffolds); occasional stooping, kneeling, crouching and crawling; no exposure to hazards as defined in the Dictionary of Occupational Titles (DOT); limited to unskilled, simple and repetitive tasks; only incidental work-related interactions with coworkers; and only brief and superficial contact with the public." (AR 12). In making this finding, the ALJ "accord[ed] great weight to the opinion of the State agency medical consultant that Plaintiff was capable of light exertion work with occasional postural activities and the need to avoid hazards and that she was capable of unskilled, simple and repetitive tasks with limited contact with coworkers, supervisors, and the general public. (AR 14). The ALJ reasoned that the consultant was "familiar with the Social Security Disability program," reviewed Plaintiff's records through the report date, and considered the Plaintiff's complaints as well as the objective findings. (AR 14). The ALJ acknowledged that Plaintiff submitted new records after the hearing that the consultant had not reviewed, but determined that the findings from these records did not justify any changes to the consultant's assessment. (AR 14). The ALJ characterized the records as indicating only that Plaintiff's medications and her mental symptoms were limited to irritability. (AR 14).

Although the ALJ accorded great weight to the state consultant's opinion, the ALJ credited only "some of [Plaintiff's] subjective complaints and functional limitations to the extent that they [were] consistent with the treatment records." (AR 14). According to the ALJ, Plaintiff's "poor work history prior to the

alleged onset date" did not enhance her credibility.  ((AR 14).
The ALJ questioned whether Plaintiff's unemployment was "due to
medical impairments as opposed to a lifestyle choice."  (AR 14).
The ALJ noted that another blemish to her credibility was that
Plaintiff "began seeking treatment only after filing for disability
benefits, not as of her alleged onset date."  (AR 14).

The ALJ further noted that while Dr. Mirza's treatment records
indicate a diagnosis of bipolar disorder and polysubstance abuse
in remission, "[a]ll of Dr. Mirza's notes[] indicate no side
effects with medication and the same prescriptions for Geodon and
Benadryl."  (AR 14).  The ALJ further indicated that in his letter
dated September 19, 2012, Dr. Mirza indicated that Plaintiff's
"functioning . . . included some impairment in concentration," but
also that Plaintiff's "memory, cooperation, fund of knowledge, and
thought associations were not significantly impacted by her mental
condition."  (AR 14).  The ALJ further indicated that the more
recent treatment records that Plaintiff did submit from Dr. Mirza
indicated only a change to her medications, and "[t]he most recent
records from February 2014 seem to indicate that [Plaintiff's]
mental symptoms at that time was [sic] irritability."  (AR 14).
The ALJ concluded that there was "no treating, examining, or
reviewing medical opinion that advocates for functional limitations
beyond those delineated in the residual functional capacity."  (AR
15).

At step four, the ALJ determined that Plaintiff had no past
relevant work.  (AR 15).  At step five, considering Plaintiff's

13

age, education, work experience, and RFC, the ALJ found that
Plaintiff could perform jobs that existed in significant numbers
in the national economy. (AR 15-16). According to the vocational
expert, Plaintiff was able perform the requirements sorter,
assembler, and polisher. (AR 16). Therefore, the ALJ concluded
that Plaintiff was not under a disability as defined by 20 C.F.R.
§§ 404.1520(g) and 416.920(g). (AR 16).


**VI.**

**STANDARD OF REVIEW**


Under 42 U.S.C. § 405(g), a district court may review the
Commissioner's decision to deny benefits. The court may set aside
the Commissioner's decision when the ALJ's findings are based on
legal error or are not supported by substantial evidence in the
record as a whole. Aukland v. Massanari, 257 F.3d 1033, 1035 (9th
Cir. 2001) (citing Tackett, 180 F.3d at 1097); Smolen v. Chater,
80 F.3d 1273, 1279 (9th Cir. 1996).


"Substantial evidence is more than a scintilla, but less than
a preponderance." Reddick, 157 F.3d at 720 (citation omitted). It
is "relevant evidence which a reasonable person might accept as
adequate to support a conclusion." (Id.) (citations omitted). To
determine whether substantial evidence supports a finding, the
court must "'consider the record as a whole, weighing both evidence
that supports and evidence that detracts from the [Commissioner's]
conclusion.'" Aukland, 257 F.3d at 1035 (quoting Penny v.
Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can

14

reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner. <u>Reddick</u>, 157 F.3d at 720-21 (citation omitted).

## VII.

### DISCUSSION

Plaintiff asserts that (1) the ALJ failed to seek a consultative examination or consult a medical expert to determine the severity of Plaintiff's mental impairments and ALJ improperly relied only on the state agency's consultative opinion that was based on a partial review of the records, (Plaintiff's Mem. In Supp. of Compl. ("Pl's Mem.") at 2, 3, 6); and (2) the ALJ did not provide specific and legitimate reasons supported by substantial evidence to reject the opinion and findings of Plaintiff's treating psychiatrist Dr. Mirza, (<u>id.</u> at 2-6).  For the reasons discussed below, the ALJ's decision is REVERSED.

**A.    The ALJ Failed To Satisfy His Duty To Develop The Record**

Plaintiff contends that the ALJ failed to seek a consultative examination or consult a medical expert to determine the severity of Plaintiff's mental impairments and improperly relied only on the State Agency doctor's opinion that was based on an incomplete review of Plaintiff's mental health records.  (Pl's Mem. at 2, 3, 6).

1   While a claimant has the burden of demonstrating a disability,
2   the ALJ has an affirmative duty fully and fairly to develop the
3   record in a social security case.  Tonapetyan v. Halter, 242 F.3d
4   1144, 1150 (9th Cir. 2001); Reed v. Massanari, 270 F.3d 838, 841
5   (9th Cir. 2001); see also Sims v. Apfel, 530 U.S. 103, 110-11
6   (2000) ("Social Security proceedings are inquisitorial rather than
7   adversarial"; "[i]t is the ALJ's duty to investigate the facts and
8   develop the arguments both for and against granting benefits.").
9   The duty is heightened when the claimant is unrepresented or
10  mentally ill and thus unable to protect her own interests.
11  Tonapetyan, 242 F.3d at 1150.  An ALJ may discharge the duty to
12  conduct an appropriate inquiry in several ways, including
13  "subpoenaing the claimant's physicians, submitting questions to
14  the claimant's physicians, continuing the hearing, or keeping the
15  record open after the hearing to allow supplementation of the
16  record."  Id. (citation omitted).  An ALJ also may order a
17  consultative examination to supplement an inadequate medical
18  record.  Reed, 270 F.3d at 841 (citing 20 C.F.R. §§ 404.1519,
19  416.919).  The duty to conduct an appropriate inquiry, however, is
20  only triggered by evidence that is insufficient or ambiguous.
21  Tonapetyan, 242 F.3d at 1150; see also Widmark v. Barnhart, 454
22  F.3d 1063, 1068-69 (9th Cir. 2006) (duty triggered by a gap in the
23  medical evidence); Reed, 270 F.3d at 842 (duty to order a
24  consultative examination triggered where additional evidence is
25  needed or there is an ambiguity or insufficiency in the evidence).
26
27  Here, the ALJ did not fully satisfy his duty to conduct the
28  appropriate inquiry.  While the ALJ kept the record open for 30

1  days to allow Plaintiff the opportunity to supplement the record
2  with a medical source statement from Dr. Mirza, cf. Tonapetyan,
3  242 F.3d at 1150; Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir.
4  1998) (as amended), the ALJ failed to order a consultative
5  examination.

6

7      While the ALJ generally has "'broad latitude in ordering a
8  consultative examination,'" Reed, 270 F.3d at 842 (quoting Diaz v.
9  Sec'y of Health & Human Servs., 898 F.2d 774, 778 (10th Cir. 1990)),
10  "[s]ome kinds of cases[] do 'normally require a consultative
11  examination,'" id. (quoting 20 C.F.R. §§ 404.1519a(b)(1), (4),
12  416.919a(b)(1), (4)). The cases requiring a consultative examiner
13  are those in which "'additional evidence needed is not contained
14  in the records of the claimant's medical sources,' and those
15  involving an 'ambiguity or insufficiency in the evidence that must
16  be resolved.'" Id. (quoting 20 C.F.R. §§ 404.1519a(b)(1),(4),
17  416.919a(b)(1),(4)). The decision whether to order a consultative
18  examination "turn[s] on an assessment of the quality of previously
19  rendered medical opinions." Reed, 270 F.3d at 844. This is "an
20  issue open to contest, and one that cannot be resolved by an ALJ
21  without analysis from other medical professionals." Id.

22

23      The ALJ specifically recognized that there was a gap in the
24  mental health evidence because Plaintiff's treating psychiatrist
25  Dr. Mirza had not submitted a medical source statement. (AR 14).
26  Therefore, other than the opinion of the state non-examining
27  consultant, the record is devoid of any other function-by-function
28  comprehensive mental residual capacity analysis. Cf. Reed, 270

17

1   F.3d at 844 (noting that record was "barren" of "analysis from
2   other medical professionals" and thus devoid of the criterion upon
3   which the decision to appoint a consultative examiner "turned");
4   id. at 843, n.2.  The state examiner based his function-by-function
5   mental assessment of Plaintiff's residual capacity on a review of
6   the record, which included a review of Dr. Mirza's treatment
7   records from 2012 but not his treatment records from 2013 and not
8   on any medical source statement from Dr. Mirza.  The decision to
9   order a consultative examination "turn[s] on an assessment of the
10  quality of previously rendered medical opinions."  Reed, 270 F.3d
11  at 844.  Here, however, there were no comprehensive analyses from
12  other medical professionals of plaintiff's mental functional
13  limitations or their impact on Plaintiff's ability to sustain
14  employment from which the ALJ could assess that quality.  Cf. id.
15  Moreover, the ALJ did not identify any other evidence (substantial
16  or otherwise) to support his reliance upon the state consultant's
17  functional assessment of Plaintiff's mental limitations.

18

19      Instead, the ALJ erroneously noted that Plaintiff began seeking
20  psychiatric help only after applying for disability benefits and
21  inaccurately characterized Plaintiff's mental health treatment
22  records from 2014 as indicating that her symptoms were limited to
23  irritability.  (AR 15).  These characterizations are not accurate.
24  The evidence establishes that Plaintiff received psychiatric
25  treatment pursuant to an involuntarily psychiatric hospitalization
26  in the early 1980s and that she received mental health treatment
27  in 1992 and mid-2005.  (AR 28, 62).  The records of Plaintiff's
28  treating psychiatrists Dr. Mirza and Dr. Yang also establish that

Plaintiff had a serious mental health condition that included a diagnosis of bi-polar disorder as well as mental limitations that were significant. (See, e.g., AR 449-57 (treatment records from 2013 repeatedly assessing Plaintiff as having only "marginal" attention, concentration, memory, insight, and judgment)). Moreover, contrary to the ALJ's finding that recent 2014 records indicate only irritability as Plaintiff's symptoms, Dr. Yang's records from early 2014 specifically note that Plaintiff's target symptoms are both mood swings and irritability. (AR 445). In addition, Dr. Mirza's treatment notes throughout 2013 consistently indicate that Plaintiff complained of mood swings, anxiety, depression, pressured speech, insomnia, and easy irritability/frustration and his notes consistently assess Plaintiff as having the limitations of "marginal" attention, concentration, memory, insight, and judgment. (AR 449-57). The ALJ relied upon his erroneous characterization of Plaintiff's most recent mental health records to conclude that the state consultant's opinion would not have been different had he reviewed Plaintiff's most recent mental health records from 2013 and 2014. (AR 14).

On these facts, the ALJ did not have sufficient evidence to discredit Mr. Mirza's findings and instead credit the state consultant's mental functional limitations. The ALJ, therefore had a duty to order a consultative examination. Cf. Reed, 270 F.3d at 842, 843 & n.2 (the ALJ failed to satisfy his duty to develop the record when he failed to order a consultative examination because the record before the ALJ did not contain any assessment

1    of the claimant's limitations on a function-by-function basis);

2    see also Garcia v. Comm'r of Soc. Sec., 768 F.3d 925, 931 (9th Cir.

3    2014) (the ALJ's duty to develop the record included ordering a

4    complete set of IQ scores for the claimant who had an intellectual

5    disability).

6

7         Moreover, the ALJ's failure to order the necessary consultative

8    examination prejudiced Plaintiff.  Cf. McLeod v. Astrue, 640 F.3d

9    881, 886 (9th Cir. 2011) (even if an ALJ fails to develop record,

10   a claimant must still show a substantial likelihood of prejudice

11   to merit remand).  The ALJ did not have a basis for assessing the

12   quality of the state consultant's mental residual functional

13   capacity, cf. Reed, 270 F.3d at 844, and he did not consider all

14   of the evidence fairly.  In addition, the ALJ indicated that if

15   Dr. Mirza provided a medical source statement consistent with his

16   treatment notes, the ALJ "probably" would "go with" Dr. Mirza's

17   opinion because he is Plaintiff's treating source.  (AR 51).

18   Because an examining consultative physician's opinion is entitled

19   to greater weight than that of a non-examining state physician,

20   see infra § VII.B, there is a substantial likelihood that the ALJ

21   might similarly have credited any contrary opinion of a

22   consultative examiner over that of the state non-examining

23   consultant.  The circumstances here, for these reasons, show a

24   substantial likelihood that the ALJ's failure to appoint a

25   consultative examiner prejudiced Plaintiff.  Accordingly, remand

26   is required.

27

28

**B.   The ALJ Failed To Provide Specific And Legitimate Reasons Supported By Substantial Evidence To Reject The Treating Physician's Opinion**

Plaintiff claims that the ALJ did not provide specific and legitimate reasons to reject the opinion of Dr. Mirza, Plaintiff's treating psychiatrist. (Pl's Mem. at 2-6).  The Court agrees.

There are three types of medical opinions in social security cases:  The opinions of (1) treating physicians, who examine and treat, (2) examining physicians, who examine but do not treat, and (3) non-examining physicians who neither examine nor treat. Valentine v. Comm'r, Soc. Sec. Admin., 574 F.3d 685, 692 (9th Cir. 2009).  Treating physicians are given the greatest weight because they are "employed to cure and [have] a greater opportunity to know and observe the patient as an individual." Magallanes v. Bowen, 881 F.3d 747, 751 (9th Cir. 1989); Thomas v. Barnhart, 278 F. 3d 947, 956-57 (9th Cir. 2002); Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003).  Accordingly, where the treating physicians' opinion is refuted by another doctor, the ALJ may not reject this opinion without providing specific and legitimate reasons supported by substantial evidence in the record.  Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995); see also Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007); Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008); compare Lester, 81 F.3d at 830 (where the treating physician's opinion is not refuted by another doctor, the ALJ must provide clear and convincing reasons for rejecting the treating physician's opinions); Holohan v. Massanari, 246 F.3d

1195, 1202 (9th Cir. 2001) (same).  The opinion of a non-examining, non-treating physician does not constitute substantial evidence to justify rejecting the opinion of either an examining or a treating physician unless it is consistent with and supported by other evidence in record.  <u>Lester</u>, 81 F.3d at 831; <u>Morgan v. Comm'r of Soc. Sec.,</u> 169 F.3d 595, 600-01 (9th Cir. 1998); <u>Tonapetyan</u>, 242 F.3d at 1149 (citing <u>Magallanes</u>, 881 F.2d at 752).  An ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by the clinical findings.  <u>Thomas</u>, 278 F,3d at 957; <u>see also</u> <u>Batson v. Comm'r of Soc. Sec.</u>, 359 F.3d 1190, 1195 (9th Cir. 2004); <u>Tonapetyan</u>, 242 F.3d at 1149.

        The ALJ in the present case failed to articulate specific and legitimate reasons supported by substantial evidence for rejecting Dr. Mirza's more restrictive assessment of Plaintiff's mental capacity in the areas of attention, concentration, memory, insight, and judgment as "marginal," (AR 449-57), and crediting the state consultant's assessment of moderate or not significant limitations in the areas of memory, understanding, and sustained concentration and persistence, (AR 14, 67, 68).  To satisfy his burden of providing specific and legitimate reasons supported by substantial record evidence to reject Dr. Mirza's findings, the ALJ was required to "set[] out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [his] interpretation thereof, and making findings."  <u>Orn</u>, 495 F.3d at 632 (citations omitted).  An "'ALJ must do more than offer conclusions.  He must set forth his own interpretations and explain why they, rather than

1   the doctors', are correct.'"  Id. (quoting Reddick, 157 F.3d at
2   725).  The ALJ did not comply with these standards.

3

4        The ALJ discounted Dr. Mirza's findings in part because, while
5   Dr. Mirza's "treatment notes indicate[d] diagnoses of bipolar
6   disorder and polysubstance abuse, in remission," the records
7   indicated "no side effects with medication and the same
8   prescriptions for Geodon and Benadryl." (AR 14).  To the extent
9   the ALJ relied upon this reason to support a rejection of Dr.
10  Mirza's findings regarding the severity of Plaintiff's mental
11  limitations, the ALJ failed to explain why the absence of side
12  effects or the prescription medications themselves would support
13  his rejection of Dr. Mirza's opinions.

14

15       The ALJ also discounted Dr. Mirza's findings by placing too
16  much weight upon Dr. Mirza's letter dated September 19, 2012, in
17  light of the total record.  The ALJ reasoned that while in his
18  letter Dr. Mirza noted that Plaintiff's concentration was impaired,
19  he also "noted that [Plaintiff's] memory, cooperation, fund of
20  knowledge, and thought associations were not significantly impacted
21  by her mental condition." (AR 14).  While the letter characterizes
22  Plaintiff's memory and thought associations as "unimpaired" and
23  her fund of knowledge as "average," (AR 229), Dr. Mirza's
24  subsequent treatment records from 2013 consistently assess
25  Plaintiff as having only "marginal" attention, concentration,
26  memory, insight, and judgment. (AR 449-57).  The ALJ's reliance
27  upon the September 2012 letter to the exclusion of more recent
28  evidence in the record did not constitute a specific and legitimate

reason supported by substantial record evidence to reject Dr. Mirza's findings from 2013.  Cf. Gallant v. Heckler, 753 F.2d 1450, 1455-56 (9th Cir. 1984) (ALJ cannot attempt to justify a conclusion by "ignoring competent evidence in the record that suggests an opposite result"); Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) ("'[A] reviewing court must consider the entire record as a whole and many not affirm simply by isolating a "specific quantum of supporting evidence."'") (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)); see also Reddick, 157 F.3d at 722-23.

The ALJ also characterized Dr. Mirza's treatment records from 2013 as indicating only a change to her medications, and the 2014 records as revealing only the mental symptom of irritability.  (AR 14).  To the extent the ALJ relied upon this characterization of Plaintiff's most recent records to support a rejection of Dr. Mirza's findings, the reason was not supported by substantial record evidence.  As discussed, Dr. Yang's records from early 2014 identified Plaintiff's target symptoms as both mood swings and irritability.  (AR 445).  Moreover, Dr. Mirza's treatment records from 2013 consistently indicate that Plaintiff complained of mood swings, anxiety, depression, pressured speech, insomnia, and easy irritability/frustration and repeatedly assess Plaintiff as having the limitations of "marginal" attention, concentration, memory, insight, and judgment.  (AR 449-57).

Finally, the ALJ could not rely on the state consultant's less restrictive findings as a reason to reject Dr. Mirza's more

restrictive findings.  The state consultant's opinion could not constitute substantial evidence to reject Dr. Mirza's findings unless it was consistent with and supported by other evidence in record.  Cf. Lester, 81 F.3d at 831; Morgan, 169 F.3d at 600-01; Tonapetyan, 242 F.3d at 1149.  The ALJ, however, neither determined that nor explained how the consultant's opinion was consistent with and supported by other record evidence in the record.  The ALJ, thus, failed to satisfy his burden of stating his interpretation of the facts and clinical evidence and explaining why his interpretations were correct.  Cf. Orn, 495 F.3d at 632.

The ALJ failed to support his rejection of Dr. Mirza's more restrictive findings regarding Plaintiff's mental limitations with specific and legitimate reasons supported by substantial evidence in the record.  Dr. Mirza's findings, as Plaintiff's treating psychiatrist for over two years, were entitled to greater weight than those of the non-examining state consultant.  The ALJ could not reject Dr. Mirza's findings without providing specific and legitimate reasons supported by substantial record evidence.  Cf. Lester, 81 F.3d at 830-31.  The ALJ, however, did not articulate specific and legitimate reasons for rejecting Dr. Mirza's findings in favor of the state consultant's or in favor of the ALJ's own conclusion that Plaintiff suffered from "moderate deficiencies in concentration, persistence or pace resulting in failure to complete tasks in a timely manner."  (AR 15).  ALJ simply opined that there was "no treating, examining, or reviewing medical opinion that advocates for functional limitations beyond those delineated in the residual functional capacity."  (AR 15).  Remand is required.

## C.   <u>Remand is Appropriate</u>

Whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. <u>Harman v. Apfel</u>, 211 F.3d 1172, 1175-78 (9th Cir. 2000). Before a court may remand a case to the ALJ with instructions to award benefits, three requirements must be met: "'(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.'" <u>Burrell v. Colvin</u>, 775 F.3d 1133, 1141 (9th Cir. 2014) (quoting <u>Garrison v. Colvin</u>, 759 F.3d 995, 1020 (9th Cir. 2014)). "Even if those requirements are met, though, [the Court] retain[s] 'flexibility' in determining the appropriate remedy." <u>Id.</u> (quoting <u>Garrison</u>, 759 F.3d at 1021). "In particular, [the Court] may remand on an open record for further proceedings 'when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act.'" <u>Id.</u> (quoting <u>Garrison</u>, 759 F.3d at 1021).

Where, as here, the record has not been fully developed and the circumstances suggest that further administrative review could remedy the Commissioner's errors, remand for further proceedings is the proper remedy.

# VIII.

## CONCLUSION

Accordingly, IT IS ORDERED that judgment be entered REVERSING the decision of the Commissioner and REMANDING this matter for further proceedings consistent with this decision.  IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Order and the Judgment on counsel for both parties.

DATED:   August 26, 2016

_____/S/_____

SUZANNE H. SEGAL
UNITED STATES MAGISTRATE JUDGE

## NOTICE

**THIS MEMORANDUM DECISION IS NOT INTENDED FOR PUBLICATION IN LEXIS, WESTLAW OR ANY OTHER LEGAL DATABASE.**